Slip Op. 15-50

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
ZHAOQING NEW ZHONGYA ALUMINUM  :
CO., LTD.,                      :
                               :
          Plaintiff,           :   Before: Nicholas Tsoucalas,
                               :           Senior Judge
     v.                        :
                               :   Court No.: 14-00043
UNITED STATES,                 :
                               :   PUBLIC VERSION
          Defendant,           :
                               :
     And                       :
                               :
ALUMINUM EXTRUSIONS FAIR TRADE :
COMMITTEE,                     :
                               :
          Defendant-Intervenor. :
_____ :

### OPINION

[Plaintiff's Motion for Judgment on the Agency Record is DENIED. Commerce's Final Results of the Administrative Review are AFFIRMED.]

Dated: __May 27, 2015__

Peter J. Koenig, Squire Patton Boggs (US), LLP, of Washington, DC, for Plaintiff.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington DC, for Defendant. With him on the brief were Tara K. Hogan, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Rebecca Cantu, Senior Attorney, Office of the Chief Counsel for Enforcement and Compliance, Department of Commerce, of Washington, DC.

Alan H. Price and Robert E. DeFrancesco, III, Wiley Rein, LLP, of
Washington, DC, for Defendant-Intervenor.

 **Tsoucalas, Senior Judge:** Plaintiff, Zhaoqing New
Zhongya Aluminum Co., Ltd., ("Zhongya") moves for judgment on the
agency record contesting Defendant United States Department of
Commerce's ("Commerce") determination to collapse into a single
entity three affiliated exporters/producers, the Guang Ya group
("Guang Ya"), Zhongya, and Xinya, in Aluminum Extrusions From the
People's Republic of China:  Final Results of Antidumping Duty
Administrative Review and Rescission in Part 2010/12 ("Final
Results of Administrative Review"), 79 Fed. Reg. 96 (Jan. 2, 2014).
Commerce and Defendant-Intervenor, Aluminum Extrusions Fair Trade
Committee, oppose Zhongya's motion.  For the following reasons,
Zhongya's motion is denied and the Final Results of Administrative
Review are affirmed.

### JURISDICTION AND STANDARD OF REVIEW

 The Court has jurisdiction over this action pursuant to
section 201 of the Customs Courts Act of 1980, 28 U.S.C. §
1581(c)(2012) and section 516 of the Tariff Act of 1930, 19 U.S.C.
§ 1516a(a)(2) (2012).[1]

---

[1] Further citations to the Tariff Act of 1930 are to the relevant
portions of Title 19 of the U.S. Code, 2012 edition, and all
applicable amendments thereto.

In reviewing a challenge to Commerce's final determination in an antidumping administrative review, the Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence means "more than a mere scintilla" of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456, 462 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, 140 (1938)).  To determine if substantial evidence exists, the court reviews the record as a whole, including whatever "fairly detracts from its weight." Id. at 488, 71 S.Ct. at 464, 95 L.Ed. at 467.  The mere fact that it may be possible to draw two inconsistent conclusions from the record does not prevent Commerce's determination from being supported by substantial evidence.  Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001); see also Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 141 (1966).

## BACKGROUND

This case concerns the first administrative review of the outstanding 2011 antidumping duty order on aluminum extrusions from the People's Republic of China ("PRC") for the period of review covering November 12, 2010, through April 30, 2012.

Final Results of Administrative Review, 79 Fed. Reg. at 96; Issues
and Decision Memorandum for Final Results of Antidumping Duty
Administrative Review: Aluminum Extrusions from PRC, A-570-967,
(Jan. 2, 2014) ("Antidumping IDM"); Aluminum Extrusions from the
PRC: Antidumping Duty Order, 76 Fed. Reg. 30,650 (May 26, 2011).

On April 4, 2011, Commerce published its final
determination of sales at less than fair value for Aluminum
Extrusions from the PRC.  Aluminum Extrusions From the PRC: Final
Determination of Sales at Less Than Fair Value ("Final
Determination of Sales at LTFV"), 76 Fed. Reg. 18,524 (Apr. 4,
2011).  Commerce investigated three Chinese producers of aluminum
extrusions: Zhongya, Guang Ya, and Xinya.  Id.

Commerce found that Guang Ya, Zhongya, and Xinya were
affiliated pursuant to 19 U.S.C. 1677 (A) and (F) and collapsed
the three entities into a single entity based upon the claim that
each entity was owned by a member of the Kwong family.  Id. at
18,526-27.  Commerce determined that the single entity was eligible
for a separate rate and that the use of adverse facts available
("AFA") was warranted for both the Guang Ya, Zhongya, Xinya, entity
and the PRC wide entity.  Id. at 18,527-29.

On April 4, 2011, Commerce also published the Final
Determination of a countervailing duty investigation of Guang Ya,
Zhongya, and Xinya.  Aluminum Extrusions From the PRC: Final
Affirmative Countervailing Duty Determination ("Final CVD

Determination") 76 Fed. Reg. 18,521 (Apr. 4, 2011); Issues and Decision Memorandum for the Final Determination in the CVD Investigation of Aluminum Extrusions from the PRC, C-570-968, (Mar. 28, 2011) ("IDM for CVD investigation"). In the Final CVD Determination, Commerce did not collapse Guang Ya, Zhongya, and Xinya, reasoning that there was no cross-ownership among the companies.  IDM for CVD investigation at 58.

 With respect to the antidumping investigation, Commerce concluded that the margin of 33.28% had probative value for the purpose of being selected as the AFA rate assigned to the Guang Ya, Zhongya, Xinya entity and the China-wide entity. Final Determination of Sales at LTFV, 76 Fed. Reg. at 18,530.  In the investigation, Commerce found that a fourth company, Da Yang, owned and managed by another Kwong family sibling, was uncooperative and so subject to the China-wide rate and not collapsed with Zhongya, Guang Ya, and Xinya.  Aluminum Extrusions From the PRC Notice of Preliminary Determination of Sales at Less Than Fair Value, and Preliminary Determination of Targeted Dumping ("Preliminary Determination of Sales at LTFV") 75 Fed. Reg. 69,403, 69,408 (Nov. 12, 2010).

 This Court affirmed Commerce's decision to collapse the entities in the antidumping investigation on October 11, 2012, and Zhongya appealed to the Court of Appeals for the Federal Circuit ("CAFC").  Zhaoqing New Zhongya Aluminum Co., Ltd. v. United

States, 36 CIT ___, Slip Op. 12-130, 887 F. Supp. 2d 1301, 1311
(Oct. 11, 2012); Zhaoqing New Zhongya Aluminum Co., Ltd. v. United
States, Appeal No. 13-1113 (Fed. Cir. June 18, 2013) (not reported
in Federal Supplement).   The CAFC dismissed the appeal on June
18, 2013. Id.

     Commerce initiated the administrative review on July 10,
2012.   Initiation of Antidumping and CVD Administrative Reviews
and Request for Revocation in Part, 77 Fed. Reg. 40,565 (July 10,
2012).   On January 2, 2014, Commerce published the Final Results
of the Antidumping Duty Administrative Review and Rescission for
Aluminum Extrusions from the PRC.   Final Results of Administrative
Review, 79 Fed. Reg. at 96.   Commerce again collapsed Zhongya,
Guang Ya Group, and Xinya into a single entity.   Id. at 97.
Additionally, Commerce found that the collapsed entity "failed to
demonstrate that it was eligible for a separate rate and thus it
is part of the PRC-wide entity." Id.   Commerce assigned the
collapsed entity a 33.28% weighted average dumping margin.   Id. at
100.   Commerce collapsed the three companies claiming that each
was owned and/or managed by a sibling or a sibling-in-law of the
Kwong family. Antidumping IDM at 19.

     Commerce justified collapsing the three companies in its
Final Results of Administrative Review while rejecting Zhongya's
arguments against collapsing. Id. at 15-21. Commerce determined
that 19 C.F.R. § 351.401(f) controls the collapsing analysis and

that "Zhongya/Guang Ya Group/Xinya is not eligible for a separate rate and is part of the PRC-wide entity." Final Results of Administrative Review, 79 Fed. Reg. at 99; see also Antidumping IDM at 15.  Commerce found that the Zhongya, Guang Ya, Xinya entity is not eligible for a separate rate, because Xinya did not answer any of Commerce's questionnaires including the quantity, value, and separate rate questionnaires, and Guang Ya did not answer the main or separate rate questionnaires. Antidumping IDM at 23.

Zhongya disputes Commerce's decision in the antidumping administrative review to collapse and treat as one entity Zhongya, Guang Ya, and Xinya. Pl.'s Mem. J. on R. at 1, Aug. 11, 2014, ECF No. 28 ("Pl.'s Br.").

### DISCUSSION

### 1. 19 C.F.R. § 351.401 (f) controls the collapsing analysis

Zhongya argues that the antidumping statute authorizes collapsing only if producers and exporters jointly produce the same subject merchandise under 19 U.S.C. § 1677(28).[2]  Pl.'s Br.

---

[2] 19 U.S.C. § 1677(28) reads as follows:

The term "exporter or producer" means the exporter of the subject merchandise, the producer of the subject merchandise, or both where appropriate.  For purposes of section 1677b of this title, the term "exporter or producer" includes both the exporter of the subject merchandise and the producer of the same subject merchandise to the extent necessary to accurately calculate the total amount incurred and realized for costs, expenses, and profits in connection with production and sale of that merchandise.

at 5.   Zhongya further contends that Zhongya, Guang Ya, and Xinya

do not jointly produce the same subject merchandise; therefore,

Commerce improperly collapsed the companies. Id.  Zhongya relies

on AK Steel Corp. v. United States to support its argument. AK

Steel Corp. v. United States, 22 CIT 1070, 1080, 34 F. Supp.2d

756, 765 (1998), rev'd on other grounds, 226 F.3d 1361 (Fed. Cir.

2000).   Commerce maintains that the language of § 1677(28) is not

intended to address collapsing issues.  Def.'s Mem. in Opp'n to

Pl.'s Rule 56.2 Mot. for J. on the Agency R. at 24, Feb. 13, 2015,

ECF No. 39 ("Def.'s Br.").  Commerce posits instead that 19 C.F.R.

§ 351.401 (f) controls the collapsing analysis. Id. at 25.

        19 C.F.R. § 351.401 (f) provides that Commerce may

collapse affiliated producers where there "is a significant

potential for the manipulation of price or production." 19 C.F.R.

§ 351.401 (f)(1) (2014).   In determining whether there is a

significant potential for manipulation Commerce considers the

following factors: (i) the level of common ownership; (ii) the

extent to which managerial employees or board members of one firm

sit on the board of directors of an affiliated firm; and (iii)

whether operations are intertwined, such as through the sharing of

sales information, involvement in production and pricing

decisions, the sharing of facilities or employees, or significant

transactions between the affiliated producers. 19 C.F.R. § 351.401

(f).

Zhongya misinterprets the Court's holding in AK Steel Corp., 22 CIT at 1080, 34 F. Supp.2d at 764-65.  Although the Court in AK Steel Corp. noted that § 1677(28) leaves Commerce the discretion to collapse, it also recognized that "there is no explicit reference to collapsing in the legislative history [of 19 U.S.C. § 1677]."  Id.  In AK Steel Corp., the Court found that Commerce previously published proposed rules to incorporate the Uruguay Round Agreements Act amendments in 1996, which included a codification of Commerce's collapsing practice.  Id. at n.22.  The proposed rule became codified in 19 C.F.R. § 351.401(f).  Id.  This court finds that 19 C.F.R. § 351.401(f) controls the collapsing analysis in the instant case, because the rule regarding collapsing is codified in 19 C.F.R. § 351.401(f).

## 2. Affiliation

Commerce may collapse entities where the entities are affiliated.  19 C.F.R. § 351.401 (f)(1).  "'Affiliated persons' and 'affiliated parties' have the same meaning as in section 771(33) of the Act [19 U.S.C. § 1677(33)]".  Ta Chen Stainless Steel Pipe Ltd. v. United States, 23 CIT 804, 808 (1999) (not reported in Federal Supplement), aff'd, 298 F.3d 1330 (Fed. Cir. 2002).  Commerce may find that "[t]wo or more persons directly or indirectly controlling, controlled by, or under common control with, any person" are affiliated under subsection (F) of 19 U.S.C. § 1677(33).  19 U.S.C. § 1677(33) (F).  Prior case law has approved

a finding of company affiliation on the basis of ownership by a single family under subsection (F).  Ferro Union, Inc. v. United States, 23 CIT 178, 194-95, 44 F.Supp.2d 1310, 1326 (1999).  In cases where affiliation is found on the basis of ownership by a single family, Commerce makes the legitimate choice to treat the family grouping as a "person" under subsection (F).  Id. at 194-95, 44 F.Supp.2d at 1326.

    Zhongya argues that Commerce erroneously found that the companies were affiliated under § 1677(33)(F), because Commerce's treatment of a family grouping as a person is contrary to law. Pl.'s Br. at 27.  Zhongya contends that the decision in Ferro Union Inc. does not demonstrate that the singular "person" in the statute needs to be interpreted in the plural to facilitate statutory intent. Pl.'s Br. at 28; see also Ferro Union Inc. v. United States, 23 CIT 178, 194, 44 F.Supp.2d 1310, 1326 (1999).

    Contrary to Zhongya's assertion, the decision in Ferro Union Inc. supports the proposition that the singular person in the statute can be interpreted in the plural to facilitate statutory intent. Ferro Union Inc., 23 CIT at 194, 44 F. Supp.2d at 1326. As the Court noted in Ferro Union Inc., the intent of 19 U.S.C. § 1677(33) was to identify control exercised through corporate or family groupings. Id.  By interpreting "family" as a control person, Commerce was giving effect to this intent. Id.

Thus, Commerce's treatment of the Kwong family grouping as a person is not contrary to law.  See id.

Zhongya next argues that Commerce's finding of affiliation is not supported by substantial evidence, because Commerce does not cite evidence showing that Zhongya, Guang Ya, or Xinya has the potential to control any of the others. Pl.'s Br. at 31.  According to 19 U.S.C. § 1677(33)(G) "a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person."  19 U.S.C. § 1677(33)(G).  To determine whether control exists Commerce may consider whether "family groupings" are present; however, Commerce is precluded from finding control "unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product."  19 C.F.R. § 351.102(b)(3). Given that the Kwong family grouping owns nearly [[    ]] of Guang Ya, Zhongya, and Xinya, the court holds that Commerce's finding was reasonable.  See id.  Since the Kwong family grouping controls the companies, the court finds that Commerce's affiliation finding is supported by substantial evidence.  See id.

### 3.  Collapsing

Commerce may collapse affiliated producers where there "is a significant potential for the manipulation of price or

production."   19 C.F.R.  §  351.401  (f)(1).   Zhongya challenges

Commerce's  decision  to  collapse  arguing  that  there  is  no

significant potential for the manipulation of price or production.

Pl.'s Br. at 36-46.

In determining whether there is a significant potential

for manipulation Commerce considers the following factors: (i) the

level of common ownership; (ii) the extent to which managerial

employees  or  board  members  of  one  firm  sit  on  the  board  of

directors of an affiliated firm; and (iii) whether operations are

intertwined,  such  as  through  the  sharing  of  sales  information,

involvement in production and pricing decisions, the sharing of

facilities or employees, or significant transactions between the

affiliated  producers.   19  C.F.R.  §  351.401  (f).   "These factors

are  considered  by  Commerce  in  light  of  the  totality  of  the

circumstances; no one factor is dispositive in determining whether

to collapse the producers."  Koyo Seiko Co. Ltd. v. United States,

31 CIT 1512, 1535, 516 F.Supp.2d 1323, 1346 (2007) aff'd, 551 F.3d

1286 (2008).  "The regulation's list of factors is non-exhaustive

and  merely  suggests  three  factors  for  Commerce  to  examine  in

establishing potential control."  Catfish Farmers of America v.

United States, 33 CIT 1258, 1266, 641 F.Supp. 2d 1362, 1372 (2009).

Although "common family ownership alone provides an insufficient

basis to collapse entities" such ownership is a "positive indicator

of the significant potential for manipulation."  Id. at 1265, 641

F.Supp. 2d at 1371.  "[T]he existence of the family group, and the significant controlling ownership by the family members, reasonably supports Commerce's collapsing decision."  Id.

Zhongya argues that there is no common ownership among the collapsed companies, because a different person owns each of the three companies.  Pl.'s Br. at 38.  Nevertheless, Commerce found that the Kwong family grouping holds nearly [[   ]] common ownership of Guang Ya, Zhongya, and Xinya in its Memorandum for Preliminary Results and confirmed this finding in its Final Results of Administrative Review.  Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: Aluminum Extrusions from the PRC 2010/12 at 8, A-570-967, (June 3, 2013); see also, Antidumping IDM, at 18.  The court rejects Zhongya's argument, because it ignores the fact that the Kwong family grouping owns nearly [[   ]] of the three companies, Zhongya, Guang Ya, and Xinya.  See Catfish Farmers, 33 CIT at 1265, 641 F.Supp. 2d at 1371.  Such controlling ownership by the Kwong family members is a positive indicator of the significant potential for manipulation. See id.

In addressing the second factor, Zhongya argues that no managerial employees or board members of one firm sits on the board of directors of another firm. Pl.'s Br. at 39.  Even if Zhongya is correct in this assertion, "there is no applicable precedent that

requires overlapping boards of directors to support a collapsing determination.   The regulation's list of factors is non-exhaustive. . . ." Catfish Farmers, 33 CIT at 1266, 641 F.Supp. 2d at 1372.   Here, members of the Kwong family are managers and members of the board of directors in all three companies.   This supports a conclusion that there is a significant potential for manipulation.  See id. (finding a significant potential for manipulation where a family group held senior leadership positions in the companies at issue).   Furthermore, as Commerce points out in its brief, members of the Kwong family group continued to serve on the boards of the Guang Ya and Zhongya. Preliminary Determination Regarding Affiliation and Collapsing at 7-8, A-570-967, (June 3, 2012).   Accordingly, the court finds that a reasonable reading of the record supports the agency's finding that there is a significant potential for manipulation with regards to the second § 351.401(f)(2) factor.

With regards to the third factor, Zhongya claims that it had no transactions with Xinya or Guang Ya during the review period.   Pl.'s Br. at 41. Zhongya also "certified that going forward it will not engage in any such transactions." Id.  Zhongya further argues that Commerce "found no evidence of [Zhongya's] relationships with Asia Aluminum Holdings, New Asia, [Xinya] and GYG [Guang Ya]." Rec. App. to Pl. Zhongya's Rule 56.2 Mem. For J. on the R., Ex. 1, at 7, Verification Report, January 28, 2010, ECF

No. 29. ("<u>Verification Report</u>").    Zhongya claims that although there was a transaction between a sibling and a spouse of a sibling, the transaction was neither an export transaction nor did it involve the subject merchandise. Pl.'s Br. at 46 n.95. Zhongya asserts that this transaction involved investing in futures, not the production or sale of aluminum extrusions. <u>Id.</u>

        The Court finds that Zhongya's arguments are unavailing for several reasons.    First, evidence regarding intertwined operations during the period of review was limited due to Guang Ya and Xinya's failure to cooperate. <u>Antidumping IDM</u> at 20.  Commerce drew a reasonable inference from Guang Ya and Xinya's lack of cooperation. <u>See</u> <u>id.</u>  Second, there was evidence that Xinya made payments to Zhongya during the period of investigation. Public App. to Def.'s Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on Agency R., P.D. 340, Attach. 1 at 10, Apr. 1, 2013, ECF No. 41. Third, as Commerce found "[it] is not clear what the nature of these payments are, as New Zhongya's accounting books, the explanation from the minority owner of New Zhongya, and the explanation from the majority owner of New Zhongya were not consistent." <u>Id.</u>  Commerce's intertwined operations analysis is reasonable, but even assuming arguendo that Commerce failed to show intertwined operations, no one factor alone is dispositive. See <u>Koyo Seiko Co.</u>, 31 CIT at 1535, 516 F.Supp.2d at 1346 (holding that Commerce considers these factors "in light of the totality of

the circumstances.")   In sum, the court finds that Commerce was reasonable in determining that a significant potential for the manipulation of price or production exists, as Guang Ya and Xinya failed to cooperate, and Zhongya failed to adequately explain the nature of payments made.

Finally, Zhongya presents four other challenges to Commerce's decision to collapse the three entities that the court also finds unavailing.  First, Zhongya argues that collapsing to address possible future manipulation violates the statutory mandate to calculate current dumping margins.  Pl.'s Br. at 9. The court disagrees, as this Court previously recognized that "Commerce's discretion to group or define companies arises out of the 'basic purposes of the statute—determining current margins as accurately as possible.'"  Fischer S.A. Comercio Industria v. United States, 36 CIT ___, Slip Op. 12-59 (Apr. 30, 2012).

Second, Zhongya argues that the antidumping statute has its own mechanisms to address concerns about manipulation without resorting to collapsing, such as statutory administrative reviews, statutory certifications, questionnaires, authorized channel dumping margin rates, and various other provisions. Pl.'s Br. at 12-23.  Zhongya notes that where a "statute explicitly provides remedies for a concern, those are the remedies intended by the

statute, not unlisted ones, which are not authorized by the
statute." Id. at 13.

Zhongya's argument is without merit. The fact that there
are other mechanisms also addressing manipulation does not
preclude Commerce from collapsing if the conditions of 19 C.F.R.
§ 351.401(f) are met. 19 C.F.R. § 351.401(f). The Court held in
Hontex that "[a]lthough the antidumping statute does not expressly
address the issue of collapsing, this court has found Commerce's
collapsing practice, now found in its regulations, to be a
reasonable interpretation of the statute." Hontex Enterprises Inc.
v. United States, 27 CIT 272, 289-90, 248 F.Supp.2d 1323, 1338
(2003). Therefore, Commerce acted in accordance with the
antidumping statute.

Third, Zhongya argues that Commerce's decision not to
collapse in the CVD investigation is inconsistent with its decision
to collapse in the antidumping investigation. Pl.'s Br. at 23.
When an agency treats two similar transactions differently, an
explanation for the agency's actions must be forthcoming.
Baltimore Gas & Electric Co. v. Heintz, 760 F.2d 1408, 1418 (4th
Cir. 1985). Zhongya points out that antidumping and CVD
investigations are similar in that there is a concern regarding
shipping through a lower margin company. Pl.'s Br. at 23.
Nevertheless, Commerce contends that there is no inconsistency,

because antidumping and CVD proceedings involve different analyses with different criteria and separate remedies. Def.'s Br. at 33-34.  The court finds that there is no inconsistency.

Although Zhongya may be correct in asserting that antidumping and CVD cases may be similar in that there is a concern regarding shipping through a lower margin company, Zhongya fails to appreciate the significant differences between 19 C.F.R. § 351.401(f) and 19 C.F.R. § 351.525(b)(6)(vi) (2014) that led to different outcomes with respect to the collapsing at issue here. In an antidumping proceeding where the issue is whether to collapse two or more companies, the emphasis is on determining the following: whether the companies are affiliated under the statute; whether the companies have facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities; and whether there is a significant potential for the manipulation of price or production. 19 C.F.R. § 351.401(f).

In contrast, in a CVD case, the inquiry is limited to whether there is cross-ownership between the companies, that is, whether "one corporation can use or direct the individual assets of the other corporation(s) in essentially the same ways it can use its own assets." 19 C.F.R. § 351.525(b)(6)(vi).  Different standards applied to the same facts may reasonably lead to

different outcomes.   Thus, there is no inconsistency between
Commerce's decision to treat the companies as a single entity in
the antidumping proceeding but not in the CVD investigation.

Ultimately, as discussed above, Commerce's decision to
collapse the three companies was reasonable, because there was a
significant potential for manipulation.

**4. Separate Rate Status**

The final issue before the court is whether Commerce
acted appropriately in assigning the collapsed entity the China-
wide rate.   Pl.'s Br. at 47. Zhongya insists that "Commerce's
practice is to treat companies who do not answer its request for
information (e.g., its separate rate questionnaire) as part of the
China-wide entity, and not eligible for collapsing with other
individually reviewed respondents."   <u>Id.</u>   Zhongya notes that in
the original investigation of aluminum extrusions from China,
Commerce determined that a fourth company, Da Yang, owned and
managed by another Kwong family sibling, was uncooperative and so
subject to the China-wide rate and not eligible for collapsing
with Zhongya, Guang Ya, and Xinya.  <u>Preliminary Determination of
Sales at LTFV</u>, 75 Fed. Reg. at 69,408.  Therefore, Zhongya asserts
that "[b]ased on the similar noncooperativeness of Guang Ya and
Xinya in this administrative review, they too should be treated

like Da Yang, given the China-wide rate and not collapsed with Zhongya." Pl.'s Br. at 47.

Commerce insists that it "appropriately treated the Guang Ya Group and Xinya as part of the collapsed entity." Antidumping IDM at 21.  Additionally, in response to Zhongya's argument, Commerce notes that its decision to treat Da Yang as part of the China-wide entity, was made "prior to the point at which the Department had acquired the information necessary to consider whether Zhonyga, the Guang Ya Group and Xinya should be treated as a single entity pursuant to 19 C.F.R. § 351.401(f)." Id.; Def.'s Br. at 33.  Commerce contends that "allowing parties to exit the collapsed entity as a consequence of their refusing to participate would allow manipulation by the parties to obtain a different rate than the one for the collapsed entity." Def.'s Br. at 32.

Commerce's practice as to nonmarket economy ("NME") exporters is to presume that all exporters are under the control of the central government until they demonstrate an absence of government control. Air Prods. & Chems. Inc. v. United States, 22 CIT 433, 436, 14 F.Supp. 2d 737, 741 (1998); Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997). "Those exporters who do not respond or fail to prove absence of de jure/de facto control are assigned the country-wide rate.  Therefore, a NME exporter normally receives one of two rates: either the separate rate for

which it qualified or a country-wide rate." <u>Coalition for the Pres. of Am. Brake Drum and Rotor Aftermkt. Mfrs. v. United States</u>, 23 CIT 88, 107, 44 F.Supp.2d 229, 248 (1999).

Xinya did not answer any of Commerce's questionnaires in this review, including Commerce's quantity and value and separate rate questionnaires. <u>Antidumping IDM</u> at 23. Guang Ya did not answer Commerce's main questionnaire or Commerce's separate rate questionnaire. <u>Id.</u> Commerce collapsed Xinya, Zhongya, and Guang Ya in the <u>Final Results of Administrative Review</u> and found that the companies were part of the PRC wide entity. <u>Id.</u> at 15; <u>Final Results of Administrative Review</u>, 79 Fed. Reg. at 99.

The court holds that Commerce's collapsing determination is consistent with its separate rate practice, because allowing Guang Ya and Xinya to exit the collapsed entity would allow for manipulation. Also, Commerce's determination, that Da Yang is part of the China-wide entity, was made prior to the point at which Commerce had acquired the information necessary to consider whether Zhonyga, Guang Ya, and Xinya should be treated as a single entity pursuant to 19 C.F.R. § 351.401(f). Commerce reviews all components that constitute the collapsed entity and any response must include data for all companies that comprise the collapsed entity. <u>See</u> <u>Notice of Final Determination of Sales at LTFV: Bicycles From the PRC</u>, 61 Fed. Reg. 19,026 (Apr. 30, 1996), and accompanying Issues and Decision Memorandum at cmt. 8; <u>see also</u>

Light-Walled Rectangular Pipe and Tube from Turkey: Final Determination of Sales at LTFV, 69 Fed. Reg. 53,675 (Sept. 2, 2004); Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Light-Walled Rectangular Pipe and Tube from Turkey at cmt. 11, A-489-812, (Sept. 2, 2004). Commerce reviewed all components that constitute the collapsed entity, that is, Xinya, Guang Ya, and Zhongya.  Any responses should have included data for all three companies.  Xinya and Guang Ya did not respond with their data.  Therefore, Commerce correctly concluded that the collapsed entity failed to demonstrate that it was eligible for a separate rate and thus it is part of the China-wide entity.

## CONCLUSION

Based on the foregoing, Commerce's Final Results of Administrative Review are AFFIRMED.  Zhongya's Motion for Judgment on the Agency Record is DENIED.   Judgment will be entered accordingly.

/s/ Nicholas Tsoucalas
**Nicholas Tsoucalas**
**Senior Judge**

**Dated:**     May 27, 2015
        **New York, New York**